UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ESTATE OF MARVIN H. PAGE, et al.,

        Plaintiff,                          Case No. 1:06-CV-245

v.                                                HON. GORDON J. QUIST

RONALD SLAGH, et al.,

        Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**

This case arises out of a fatal accident between a car driven by Joshua Slagh and a car driven by Dustin Rice in which Marvin Page and Rachel Marie Page were passengers. The Plaintiffs, the Estate of Marvin Page, the Estate of Rachel Marie Page, and Dustin Rice, contend that the Defendants, Ronald Slagh, personally and as trustee of the Ronald J. Slagh Trust, Gail Slagh, Bruce Slagh, personally and as trustee of the Bruce Slagh Trust, Vernon Slagh, personally and as trustee of the Vernon Alan Slagh Trust, Slagh LLC, and Filler Specialties, Inc., conducted a series of fraudulent conveyances under the Michigan Uniform Fraudulent Transfers Act (MUFTA), M.C.L. § 566.31 *et seq.*, M.C.L. § 600.3131, and M.C.L. § 600.6134, to avoid the monetary obligations of a civil judgment in Michigan state court resulting from the fatal accident. Now before the Court is the Plaintiffs' motion to apply the crime-fraud exception to the attorney client privilege and to compel the testimony of attorney Joel Bouwens. At a hearing on December 7, 2006, the Court determined that an *in camera* review of Mr. Bouwens and his records related to the allegedly fraudulent transfers was appropriate based on the reasonable suspicion created by the timing and effect of the transfers. The Court conducted the *in camera* review on April 9, 2007. For the

following reasons and based on its *in camera* review of Mr. Bouwens and the documents related to the allegedly fraudulent transfers, the Court will grant the Plaintiffs' motion based upon its conclusion that the crime-fraud exception to the attorney client privilege has been established.

## Analysis

The attorney client privilege does not cover communications made in furtherance of a crime or fraud. There is a two part test that the moving party must meet to invoke the crime fraud exception and obtain access to otherwise privileged attorney-client communications. "First, the [moving party] must make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the [moving party] must establish some relationship between the communication at issue and the prima facie violation." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir.1986)) (internal quotations omitted). "The evidentiary burden for making this prima facie showing is the same as that for demonstrating probable cause-such that 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud'-and not as demanding as the 'clear and convincing' threshold." *United States v. Clem*, 210 F.3d 373, at **4 (6th Cir. Mar. 31, 2000) (unpublished table decision) (citing *In re Antitrust Grand Jury*, 805 F.2d at 164-65).

**1.      Prima Facie Showing of a Crime or Fraud**

"To satisfy its prima facie showing, the evidence presented by the [moving party] must be such that 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.'" *Collis*, 128 F.3d at 321 (citing *In re Antitrust Grand Jury*, 805 F.2d at 166). In this case, the Defendants' transfers are alleged to violate M.C.L. § 566.34 because they were performed with the intent to hinder, delay, or defraud the Plaintiffs. The statute provides, in part, that:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
> ...
> (2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:
> (a) The transfer or obligation was to an insider.
> ...
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was substantially all of the debtor's assets.
> ...
> (g) The debtor removed or concealed assets.
> ...
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

Although no Michigan court has addressed the issue of whether a violation of the MUFTA or UFTA is sufficient to invoke the crime-fraud exception to attorney client privilege, at least one other state court has determined that the fraud exception may be invoked based upon a fraudulent transfer under the UFTA. *See Martin v. McEvoy*, No. 34254-1-I, 1996 WL 335996 (Wash. Ct. App. June 17, 1996), *review denied*, 130 Wash.2d 1025, 930 P.2d 1229 (Wash. Jan 08, 1997) (unpublished table decision no. 64356-3) ("We hold that the fraud exception to the attorney/client privilege applies to communication made in furtherance of transfers that are fraudulent under the Uniform Fraudulent Transfer Act.").

As the Court stated on the record at the hearing on December 7, 2006, the timing and effect of the transfers at issue in this case raise a reasonable suspicion that the transfers were undertaken in violation of the MUFTA. Therefore, the first part of the test is satisfied.

**2.     Relationship Between the Attorney-Client Communication and the Alleged Fraud**

As this district has previously noted, there "must be a prima facie showing that the confidential communication was involved in the preparation or furtherance of the specific unlawful conduct." *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 481-82 (W.D. Mich. 1997) (citing *In re Antitrust Grand Jury*, 805 F.2d at 167 ("[M]erely because some communications may be related to a crime is not enough to subject that communication to disclosure; the communication must have been made with an intent to further the crime.")). This "condition may be met by finding that the communications reasonably relate to the subject matter of the possible violations." *In re Enron Corp.*, 349 B.R. 115, 127 (Bankr. S.D.N.Y. 2006) (quoting *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 100 (S.D.N.Y. 1993)). "The intent, knowledge or culpability of counsel is not the dispositive factor; a communication of advice provided in good faith by counsel may yet lose its privileged status if its substance is misrepresented by the client with intent to defraud." *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. at 101.

After conducting an *in camera* review of the documents provided by Mr. Bouwens, the Court is satisfied that the confidential communication was reasonably related to the preparation or furtherance of the transfers that are alleged to violate the MUFTA. In reaching its conclusion, the Court is making no determination about whether a violation of the MUFTA occurred. The Court wishes to emphasize that there is no evidence, and no claim, that Mr. Bouwens was guilty of fraud in the common law sense of intent to deceive.[1] Therefore,

---

[1] As Mr. Bouwens' brief discussed, courts have noted that "an action for fraudulent conveyance is distinct from an action for fraud." *Mack v. Newton*, 737 F.2d 1343, 1362 n.25 (5th Cir. 1984). *See also Elliott v. Glushon*, 390 F.2d 514, 516 (9th Cir. 1967) ("It is also significant that the term 'fraudulent transfer' as used in the [Bankruptcy] Act includes a great many transactions which do not constitute 'actual' fraud; no intent to defraud need be found so long as the prescribed statutory criteria are met.").

**IT IS HEREBY ORDERED** that the crime fraud exception to the attorney client privilege has been established regarding the communications between Ronald Slagh and Joel Bouwens.

**IT IS FURTHER ORDERED** that, if requested, Mr. Bouwens must appear to testify regarding his representation of Ronald Slagh after August 6, 2003.

Dated:  May 8, 2007                                              /s/ Gordon J. Quist
                                                                           GORDON J. QUIST
                                                                  UNITED STATES DISTRICT JUDGE